# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ARTI JOSHI,
on behalf of herself and all others
similarly situated,

    Plaintiff,

vs.

FIFTH THIRD BANK,
a foreign corporation, and
FIFTH THIRD BANCORP,
 a foreign corporation,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 6:08-CV-584-ORL-19-KRS

**COLLECTIVE ACTION**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ARTI JOSHI (hereinafter, "Plaintiff"), by and through her undersigned counsel, sues the Defendants, FIFTH THIRD BANK, a foreign corporation, and FIFTH THIRD BANCORP, a foreign corporation, (collectively, "Defendants"), and states as follows:

### INTRODUCTION

1.    This is a collective action by Plaintiff, on behalf of herself and all others similarly situated, against Defendants, her former employers, for their willful misclassification of her employment status as exempt from the overtime pay requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA") and their willful refusal to pay overtime compensation for all hours worked in excess of forty (40) in a workweek. Plaintiff also brings this action

individually against Defendants for willful wage disparity and retaliation in violation of the Equal Pay Act of 1963, 29 U.S.C. §206(d)(1) ("EPA").

## JURISDICTION

2.      This action arises under the FLSA, 29 U.S.C. § 201, *et seq.*, and the EPA, 29 U.S.C. §206(d)(1).  This Court has jurisdiction over claims filed under the FLSA and the EPA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

## VENUE

3.      Pursuant to 28 U.S.C. § 1391(b), the venue of this Court over this controversy is proper based upon the claim arising within this Court's judicial district in Orange County, Florida.

## THE PARTIES

4.      Plaintiff is a citizen and resident of Orange County, Florida.

5.      Plaintiff is a female and over the age of 18.

6.      Plaintiff was, at all times material hereto, an "employee" of the Defendants as that term is defined by 29 U.S.C. § 203(e) and employed at Defendants' office in downtown Orlando, Florida.

7.      From or about April 18, 2005 through or about March 2007, Plaintiff was employed as an Investment Advisor Sales Support Assistant ("IA Sales Support Assistant").

8.      In or about March 2007, Plaintiff received the title of Associate Private Banker. Plaintiff held this position until her termination on March 19, 2008.

9.     The putative members of this collective action include those persons who are or were employed by Defendants within the last three years as IA Sales Support Assistants and/or in other similarly situated positions. More complete definitions of the putative class members and class positions are set forth in paragraphs 21 through 24, below.

10.     Defendant FIFTH THIRD BANK is a foreign for-profit corporation which does business as a diversified financial services company throughout Ohio, Georgia, Illinois, Indiana, Kentucky, Michigan, Missouri, Pennsylvania, Tennessee, West Virginia, and Florida, including its Orlando, Florida location at which Plaintiff was employed.

11.     Defendant FIFTH THIRD BANK, at all times material hereto, had annual gross sales or business of no less than $500,000.00 and was engaged in interstate commerce or in the production of goods for interstate commerce as defined in §§ 3(r) and 3(s) of the FLSA, 29 U.S .C. § 203( r) and § 203(s).

12.     Defendant FIFTH THIRD BANK was, at all times material hereto, Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

13.     Defendant FIFTH THIRD BANCORP is a foreign for-profit corporation which does business as a diversified financial services company throughout Ohio, Georgia, Illinois, Indiana, Kentucky, Michigan, Missouri, Pennsylvania, Tennessee, West Virginia, and Florida, including its Orlando, Florida location at which Plaintiff was employed.

14.     Defendant FIFTH THIRD BANCORP, at all times material hereto, had annual gross sales or business of no less than $500,000.00 and was engaged in interstate commerce or in the production of goods for interstate commerce as defined in §§ 3(r) and 3(s) of the FLSA, 29 U.S.C. § 203( r) and § 203(s) .

15.     Defendant FIFTH THIRD BANCORP was, at all times material hereto, Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

16.     Upon information and belief, Defendant FIFTH THIRD BANCORP is the parent company of Defendant FIFTH THIRD BANK.  Alternatively, at all times material hereto, FIFTH THIRD BANCORP maintained a significant degree of control over FIFTH THIRD BANK's employees, including the terms and conditions of employment of such employees, and, as such, is a "single employing enterprise" or, alternatively, "joint employer" of FIFTH THIRD BANK's employees.

17.     Moreover, by reason of her employment with Defendants, at all times material hereto, Plaintiff was employed by entities engaged in interstate commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiff, at all times material hereto, was engaged in interstate commerce.  The work performed by Plaintiff, at all times material hereto, was directly essential to the business operations of Defendants in interstate commerce.

18.     Plaintiff has retained the law firm of Nathan A. McCoy, P.A. to represent her in this matter and has agreed to pay said firm a reasonable attorney's fee for its services.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.   Plaintiff brings this Complaint as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of herself and all others similarly situated.

20.   This Complaint may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for all claims asserted by Plaintiff because the claims of Plaintiff are similar to the claims of the putative plaintiffs of the representative action.

21.   As an IA Sales Support Assistant, Plaintiff performed the primary duties of:

    a.   Assisting in the preparation of presentations;

    b.   Coordinating with marketing department to ensure that marketing materials for the Investment Advisors sales team was available for their use;

    c.   Scheduling internal and external meetings and/or events for the Investment Advisors team;

    d.   Assisting Investment Advisor managers with mailings, seminars, research, and customer correspondence; and

    e.   Performing various administrative duties, including answering phones, making travel arrangements, filing, and preparing correspondence.

22.    The positions subject to this collective action include the IA Sales Support Assistant position and any other full-time similarly situated position which is or was, within the three years prior to the filing of this lawsuit, classified as exempt from the overtime requirements of the FLSA and which requires persons to perform primary job duties which are the functional equivalent of those primary duties performed by IA Sales Support Assistants (collectively, the "Class Positions").

23.    None of the Class Positions contemplated by this collective action performed any of the following primary duties:

   a.  Analyzing information regarding the customer's income, assets, investments or debts;

   b.  Determining which financial products best meet the customer's needs and financial circumstances;

   c.  Advising the customer regarding the advantages and disadvantages of different financial products; or

   d.  Marketing, servicing or promoting the employer's financial products.

24.    The putative class members of this action include those persons who are or were, within the three years prior to the filing of this action, employed by Defendants in any of the Class Positions who have not received overtime compensation for all hours worked in excess of forty (40) hours in a workweek (collectively, the "Potential FLSA Opt-in Plaintiffs").

25.     Plaintiff and the Potential FLSA Opt-in Plaintiffs are similarly situated in that they have or had, at all times material hereto, substantially similar job requirements, duties, and pay provisions, and were or are subject to the Defendants' common practice, policy or plan of unlawfully classifying their employment as exempt from the overtime provisions of the FLSA and willfully denying them overtime compensation for hours worked in excess of forty (40) hours in a workweek.

26.     The names and addresses of the Potential FLSA Opt-in Plaintiffs of the representative action are available from Defendant. To the extent required by law, notice will be provided to said individuals via First Class Mail and/or by the use of techniques and a form of notice similar to those customarily used in representative actions.

27.     Plaintiff, subsequent to the filing of this Complaint, shall file her written consent to "opt-in" to this lawsuit to serve as the class action representative. Moreover, upon information and belief, the Potential FLSA Opt-in Plaintiffs will file written consent forms with the Court.

## GENERAL ALLEGATIONS

28.     In or about early April 2005, Alexander Vandenberg hired Plaintiff to work for Defendants as a full-time IA Sales Support Assistant. Plaintiff began work for Defendants on April 18, 2005.

29.     Plaintiff's beginning salary was approximately $40,000.00 per year. This salary was eventually increased in early 2006 to $42,000.00 per year.

30.    Defendants did not at any time inform Plaintiff that her salary was to cover all hours worked.

31.    As an IA Sales Support Assistant, Plaintiff performed the primary duties described in paragraph 21, *supra*.

32.    Specifically, Plaintiff supported her immediate supervisor and others within the Investment Advisors sales team, including but not limited to Michelle Byington and David Baer.

33.    In order to complete her job duties, it was often necessary for Plaintiff – and even required by Defendants – to work more than forty (40) hours in a workweek.

34.    Plaintiff, on occasion, worked through lunches or suffered interrupted lunch breaks.

35.    Defendants required Plaintiff to attend the internal and external meetings and/or events she coordinated for the Investment Advisors team she supported. Many of these meetings and/or events occurred before or after regular business hours.

36.    On occasion, when Defendants acknowledged that Plaintiff worked well in excess of forty (40) hours in a workweek, they offered Plaintiff "comp time" in lieu of additional compensation.

37.    Plaintiff routinely received and replied to work-related telephone calls and e-mails from her supervisors and others whom she supported at work before and after she reported to work.  Generally, such communications interrupted Plaintiff while she was at home or tending to personal matters.

38. Throughout her employment with Defendants as an IA Sales Support Assistant, Defendants classified Plaintiff, and all others within the Class Positions, as exempt from the FLSA overtime requirements.

39. A copy of Plaintiff's 2006 Performance review, which is attached hereto as Exhibit A, confirms the Defendants' classification of Plaintiff's employment as "exempt" from the FLSA's overtime requirements.

40. Upon information and belief, Defendants failed to keep accurate time records of all hours worked by Plaintiff and others within the Class Positions. Moreover, at no time during her employment with Defendants as an IA Sales Support Assistant did Plaintiff ever receive overtime compensation for hours worked in excess of forty (40) in a workweek.

41. In or about April 2006, Michelle Byington and David Baer resigned from the Defendants' employ.

42. Due to Plaintiff's existing relationships with the clients whose accounts were vacated by Ms. Byington and Mr. Baer, Plaintiff was required by Defendants to perform many of the job duties which had been performed by Ms. Byington and Mr. Baer in addition to the duties she already performed as an IA Sales Support Assistant. Among those Associate Private Banker duties performed by Plaintiff were negotiating loans and passing them on to underwriters, obtaining approval of the proposed loans, and closing on the approved loans.

43. Due to her concurrent performance of the IA Sales Support Assistant and Associate Private Banker roles, Plaintiff worked many more hours than she

had when she had solely performed the duties of an IA Sales Support Assistant. In fact, her performance of dual roles required her to work an estimated 10 additional hours per week.

44.     Plaintiff was recognized by Defendants and her temporary supervisor, David Webb, for the additional hours worked and job duties she performed. Nevertheless, Plaintiff was not paid any additional compensation for the additional hours she worked.

45.     In or about mid-May 2006, Plaintiff received an offer of employment from SunTrust, a competitor of the Defendants. Plaintiff advised the Defendants of this offer and informed them that she intended to resign.

46.     D'Lynn Underwood, Defendants' Human Resources Director, and Jacques Aebli, Plaintiff's new supervisor, urged Plaintiff to stay employed with Defendants. In response, Plaintiff advised them that she wanted to be compensated for the additional hours she worked and job duties she performed.

47.     Although Defendants refused to pay Plaintiff for the additional hours she worked and job duties she performed, Mr. Aebli promised Plaintiff that he would promote her to the position of Associate Private Banker.

48.     Mr. Aebli promised to promote Plaintiff to the Associate Private Banker role in order to keep the existing relationships she had with the clients whose accounts were vacated by Ms. Byington and Mr. Baer.

49.     Mr. Aebli further promised Plaintiff that he would help her build a book of business.

50.     Although Mr. Aebli promised to promote Plaintiff to the position of Associate Private Banker, he did not immediately do so.

51.     In fact, Plaintiff was required to retain her title and responsibilities as an IA Sales Support Assistant while she also performed the job duties of an Associate Private Banker.

52.     An Associate Private Banker is an officer position and performs the following duties:

     a.  Developing and managing high level customer relationships;

     b.  Building a referral network to ensure stream of new business prospects;

     c.  Consulting with and directing customers to company specialist for advice and implementation (i.e., Brokerage, Investment Management, Trust etc.);

     d.  Providing deposit accounts and related fee services to assigned customer base;

     e.  Attending networking events and represent 5/3 bank at community events;

     f.  Servicing existing book of clients; and

     g.  Identifying cross selling opportunities.

53.     From or about May 2006 through March 2007, Plaintiff continued to perform the job functions of an IA Sales Support Assistant and an Associate Private Banker. Even though Plaintiff performed the duties of an Associate Private Banker, she

was not compensated for the additional hours she worked or for the performance of her additional duties.

54.     Moreover, from or about May 2006 through March 2007, Plaintiff played an integral role in the renewal of customer accounts which had been vacated by Michelle Byington and David Baer.  Nevertheless, Plaintiff did not receive any additional compensation or credit for her efforts.  Instead, male Associate Private Bankers received credit for Plaintiff's work.  For instance, Stan Miller, a male Associate Private Banker, received bonus credit for the renewal of the Cornell Family account, an account which is believed to be worth well over $2,000,000.00.

55.     Upon information and belief, Jacques Aebli gave or assigned to Stan Miller the vast majority of the books of business which were vacated by Michelle Byington and David Baer even though Plaintiff was responsible for the renewal of many of these accounts.

56.     Furthermore, from or about May 2006 through March 2007, Plaintiff opened numerous new accounts for Defendants.  These accounts were recorded under the name of Christopher Boston, a male Associate Private Banker.

57.     In or about March 2007, after Plaintiff had already renewed and opened new customer accounts for Defendants which were worth millions of dollars, Defendants finally awarded Plaintiff with the title of Associate Private Banker.

58.     At the time of her promotion, Plaintiff was the only female officer within the Investment Advisors sales team.

59.     Plaintiff was the first ever IA Sales Support Assistant to transition directly into the Associate Private Banker position.

60.     Despite Plaintiff's efforts between May 2006 and March 2007, Plaintiff was not credited with any of the accounts she renewed for Defendants. Moreover, Jacques Aebli did not transfer, reassign, or give any new customer accounts to Plaintiff to help build her book of business.

61.     When Plaintiff was promoted to Associate Private Banker, her salary was increased to $46,000.00 per year.

62.     Plaintiff's new annual salary of $46,000 was not commensurate with the increase in title and responsibility of an Associate Private Banker.

63.     In fact, when Plaintiff learned of her new salary, she was informed by Defendants' Human Resources Director, D'Lynn Underwood, that the Defendants' policy, which does not allow an employee to be "bumped up" more than two pay grade levels, prevented her from receiving the salary normally associated with the Associate Private Banker position.

64.     Plaintiff's starting salary as an Associate Private Banker was less than that of the male Associate Private Bankers employed by Defendants.

65.     Although the exact salaries of her male peers within the Investment Advisors sales team at the time of Plaintiff's promotion are not known, Plaintiff, upon information and belief, believes that her male coworkers, such as Stan Miller, earned, at minimum, $20,000.00 per year more than her for work which required substantially equal skill, effort, and responsibility.

66.     Plaintiff complained to her supervisor, Jacques Aebli, about the wage disparity between her and her male coworkers.

67.     In response to Plaintiff's concerns over her salary, Mr. Aebli told Plaintiff that she would need to "prove herself" during her first year as an Associate Private Banker and that if she proved she could do the job he would consider seeking the appropriate salary for her.

68.     Mr. Aebli even further promised Plaintiff that he would "try" to make up for the lack of increase in salary with higher quarterly bonuses. Nevertheless, when Plaintiff asked if Mr. Aebli would give her the accounts which were vacated by Michelle Byington and David Baer and which she was responsible for renewing during the period of May 2006 – March 2007, Mr. Aebli stated to the effect that he could not because clients get to choose which Associate Private Banker is assigned to their accounts.

69.     As an Associate Private Banker, Plaintiff was entitled to quarterly bonuses if she achieved 100% of her supervisor-designated goals. The actual bonuses to be received by Plaintiff and others within the Private Banking Department were based, in part, on their respective annual salaries.

70.     Notably, Plaintiff achieved 300 to 400% of her supervisor-established goals for the 2007 year. She is believed to have attained the highest percent of supervisor-established goals within the Investment Advisors sales for the 2007 year.

71.     Despite obtaining 300 to 400% of her supervisor-established goals for the 2007 year, Plaintiff received only a $10,000 year-end bonus. Comparatively,

Plaintiff believes that one or more of her male comparators, such as Stan Miller, received bonuses which exceeded her $46,000.00 base salary.

72.     Upon information and belief, Plaintiff's supervisor, Jacques Aebli, was notified by Defendants in or about late December 2007 that Defendants would implement a reduction in force ("RIF") which would require him to terminate the employment of an employee within his department.

73.     Despite Mr. Aebli's knowledge of a possible RIF, in or about January 2008, Mr. Aebli promoted a male IA Sales Support Assistant, Kyle Graham, to the position of Associate Private Banker.

74.     In order to build Mr. Graham's book of business, Mr. Aebli gave or reassigned several existing customer accounts, including the Rissman Weisberg account, to Mr. Graham.

75.     In or about mid February 2008, Plaintiff learned that each of the male Associate Private Bankers had received his annual performance review and been assigned new goals for the 2008 year from Jacques Aebli while she had not.

76.     On or about February 28, 2008, Plaintiff was notified by Defendants that she was selected for a RIF. Moreover, Plaintiff was informed by Defendants that she would remain employed until 5:00 PM on March 19, 2008.

77.     Notably, Plaintiff was the only person from the Investment Advisors sales team who was selected for the RIF.

78.     Plaintiff was not the least senior member of the Investment Advisors sales team. In fact, Kyle Graham did not assume the role of Associate Private

Banker until sometime in January 2008, almost two years after Plaintiff began performing the job duties of an Associate Private Banker and nearly a year after Plaintiff acquired the same role.

79.    On or about February 28, 2008, Plaintiff requested an explanation for her selection for the RIF from Human Resources and Jacques Aebli.

80.    Despite Plaintiff's request for an explanation as to how she was selected for the RIF, neither Mr. Aebli nor Human Resources Representative Suzanne Skelton-Parker provided her with any specific reason for her termination or the general criteria/selection procedures for the RIF.   Ms. Skelton-Parker did, however, assure Plaintiff that her selection for the RIF was not performance related.

81.    On or about March 11, 2008, approximately two weeks after Plaintiff was notified that she had been selected for the RIF and one week prior to the termination of Plaintiff's employment with Defendants, Defendants posted an open position on their Web site, www.53.com, for an Associate Private Banker position in the very office at which Plaintiff was employed.   A copy of this posting, which is listed as Requisition # 2008-65656, is attached hereto as Exhibit B.

82.    On March 18, 2008, Plaintiff notified Defendants of, among other things, their misclassification of her IA Sales Support Assistant position as an exempt position and failure to properly pay her, and all others similarly situated, overtime compensation for all hours worked in excess of forty (40) hours in a workweek.

83.    On March 18, 2008, Plaintiff also notified Defendants of, among other things, their failure to pay her an equivalent salary and bonuses as her male

comparators for work which required equal skill, effort, and responsibility, and which was performed under similar working conditions and of her knowledge of the March 11, 2008 posting of the Associate Private Banker position.

84.     Despite Plaintiff's March 18, 2008 communication to Defendants requesting backpay for unpaid overtime compensation, backpay for wage disparity, and continued employment and/or reinstatement, Defendants terminated Plaintiff's employment on March 19, 2008.

85.     On or about April 3, 2008, approximately two weeks after Plaintiff notified Defendants that they had misclassified Plaintiff's employment as an IA Sales Support Assistant as exempt from the FLSA's overtime requirements, Defendants posted an open position on its Web site, www.53.com, for an IA Sales Support Assistant for its Clearwater, Florida location. A copy of this posting, which is listed as Requisition # 2008-66521, is attached hereto as Exhibit C.

86.     Notably, Requisition # 2008-66521 indicates that the IA Sales Support Assistant position is a full time, *non-exempt* position.

87.     Furthermore, the "essential duties and responsibilities" of the position appearing in Requisition # 2008-66521 are the same as those primary duties performed by Plaintiff as a full time IA Sales Support Assistant.

88.     On Friday, April 4, 2008, Plaintiff applied online to the open Associate Private Banker position listed as Requisition # 2008-65656.

89.     Plaintiff was qualified for the open Associate Private Banker position which was posted as Requisition # 2008-65656.

90.     On or about Tuesday, April 9, 2008, Defendants removed the posting for the Associate Private Banker position from its Web site.

91.     Plaintiff, despite being fully qualified for the vacant position, did not receive an interview or offer of reinstatement from Defendants for the open Associate Private Banker position.

92.     As a result of Defendants failure to interview Plaintiff for or offer her the vacant position of Associate Private Banker, Plaintiff was forced to accept a position with a competing bank which pays her at a rate which is less than what she should have received as an Associate Private Banker with Defendants.

93.     Notably, on or about Tuesday, April 16, 2008, the day after Plaintiff accepted another position, Defendants reposted the Associate Private Banker position on its Web site.

## COUNT I
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT

94.     This is a potential collective action by Plaintiff, on behalf of herself and the Potential FLSA Opt-in Plaintiffs, pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 201, *et seq.*, to remedy violations of the FLSA's overtime pay provisions that have occurred within the previous three years of the commencement of this action.

95.     Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 93, above.

96.     Throughout Plaintiff's employment with Defendants as an IA Sales Support Assistant, Defendants misclassified her employment, as well as that of the Potential FLSA Opt-in Plaintiffs, as exempt from the overtime requirements of the FLSA.

97.     Defendants either knew or should have known that the primary duties of the IA Sales Support Assistant position were non-exempt duties which entitled Plaintiff, as well as the Potential FLSA Opt-in Plaintiffs, to overtime compensation for hours worked in excess of forty (40) in a workweek.

98.     Defendants repeatedly and willfully violated Section 7 and Section 15 of the FLSA by failing to compensate Plaintiff, as well as the Potential FLSA Opt-in Plaintiffs, at a rate not less than one and one-half times the regular rate at which she was, and the Potential FLSA Opt-in Plaintiffs were/are, employed for workweeks longer than forty (40) hours.  Specifically, Plaintiff worked numerous weeks in excess of forty (40) hours a week, yet she was not compensated for any hours worked in excess of forty (40) at a rate not less than one and one-half times the regular rate at which she was employed.

99.     By failing to compensate Plaintiff and the Potential FLSA Opt-in Plaintiffs at a rate of not less than one and one-half times their regular rates of pay for work performed in excess of forty hours in a work week, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §201, *et seq.*, including 29 U.S.C. §207(a)(1) and §215(a).

100.    By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff and the Potential FLSA Opt-in Plaintiffs, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient

to determine their wages, hours, and other conditions of employment, in violation of the FLSA, 29 U.S.C. §201, *et seq.*, including 29 U.S.C. §211(c) and §215(a).

101.   Defendants willfully violated the FLSA within the meaning of 29 U.S.C. §255(a).

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

    a.   An award of unpaid overtime compensation due for the three year period preceding the filing of this action and through the date of final disposition, in amounts to be determined at trial;

    b.   An award of liquidated damages as provide by the FLSA, 29 U.S.C. § 216(b);

    c.   Prejudgment interest in the event liquidated damages are not awarded;

    d.   An award of reasonable attorneys' fees and costs incurred in this action;

    e.   An order of the Court certifying this case as a collective action and authorizing notice to all Potential FLSA Opt-in Plaintiffs, pursuant to 29 U.S.C. § 216(b).

    f.   Any further relief the Court deems just and equitable.

## COUNT II
## WAGE DISPARITY IN VIOLATION OF THE EQUAL PAY ACT

102.   This is an action by Plaintiff to remedy violations of the Equal Pay Act of 1963, 29 U.S.C. §206(d)(1).

103.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 93 and paragraph 102, above.

104.    From or about May 2006 through the remainder of her employment with Defendants, Defendants paid Plaintiff a lesser rate and lesser bonuses than similarly situated male employees for equal work on jobs the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

105.    Defendants were aware of or disregarded the very possibility of an existing wage disparity between Plaintiff and her male comparators but did not correct the alleged wage disparity.

106.    By their above-described acts and conduct, Defendants willfully violated the EPA.

107.    Plaintiff has suffered direct pecuniary losses as a result of the Defendants' above-described violation of the EPA.

WHEREFORE, Plaintiff prays for relief as follows:

   a. A judgment for back pay, including the difference between what Plaintiff would have earned had she remained employed by Defendant through trial, less interim earnings, together with pre-judgment interest thereon;

   b. Liquidated damages, with liquidated damages being the equivalent amount of the back pay and back benefits award;

   c. In light of the impracticality of reinstatement, front pay;

    d.  Prejudgment interest in the event liquidated damages are not awarded;

    e.  A reasonable attorney's fee and costs; and

    f.  Such other relief as this Court deems just and equitable.

## COUNT III
## RETALIATION IN VIOLATION OF THE EQUAL PAY ACT

108.    This is an action for retaliation pursuant to 29 U.S.C. §215(a)(3).

109.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 93 and 102 through 107, above.

110.    In or about March 2007, Plaintiff engaged in protected activity by complaining to Defendants of wage disparity which is prohibited by the Equal Pay Act.

111.    After Plaintiff engaged in the above-cited protected activity, Defendants failed to correct the unlawful wage disparity and took adverse actions against Plaintiff. Specifically, Defendants retaliated against Plaintiff by failing to properly credit and award her with accounts for which she was responsible for obtaining renewals, paying her lower bonuses, selecting her for a RIF rather than a less senior male employee, and posting an Associate Private Banking on March 11, 2008 without first offering same to Plaintiff.

112.    On or about March 18, 2008, Plaintiff again engaged in protected activity by complaining of Defendants' actions which violated the EPA.

113.    Defendants again took adverse actions against Plaintiff after she engaged in the above-cited protected activity. Specifically, Defendants retaliated against Plaintiff by failing to timely investigate Plaintiff's complaints prior to her discharge,

failing to offer Plaintiff the open Associate Private Banking position which became available prior to her termination date, terminating Plaintiff's employment, failing to interview and subsequently offer Plaintiff the open position of Associate Private Banker after she applied for same, removing the Associate Private Banking posting after Plaintiff applied for the open position, and reposting the Associate Private Banking position after Plaintiff had accepted other employment with a competing bank.

114.    There is a causal relationship between Plaintiff's protected activity and the adverse actions suffered by Plaintiff.

115.    As a direct and proximate cause of Defendants' unlawful retaliatory conduct as alleged herein, Plaintiff has been and continues to be damaged.

116.    The foregoing conduct, as alleged, constitutes unlawful retaliation in violation of 29 U.S.C. §215(a)(3).

WHEREFORE, Plaintiff prays for relief as follows:

a.  A judgment for back pay, including the difference between what Plaintiff would have earned had she remained employed by Defendant through trial, less interim earnings, together with pre-judgment interest thereon;

b.  Liquidated damages, with liquidated damages being the equivalent amount of the back pay and back benefits award;

c.  In light of the impracticality of reinstatement, front pay;

d.  Prejudgment interest in the event liquidated damages are not awarded;

e.   A reasonable attorney's fee and costs; and

f.   Such other relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial on all causes of action and claims with respect to which she and all members of the proposed representative action have a right to jury trial.

DATED this 17th day of April, 2008.

Respectfully submitted,

Nathan A. McCoy
Florida Bar No. 0676101

NATHAN A. MCCOY, P.A.
151 Lookout Place, Suite 210
Maitland, Florida 32751
Telephone:      (407) 644-2460
Facsimile:       (407) 644-2705
E-Mail:          nathan@nmccoylaw.com

TRIAL COUNSEL for the Plaintiff

## Exhibit "A"



FIFTH THIRD BANK

JOB SEARCH · RESULTS ·

### Job Profile

**MENU**
Career Opportunities
Return to Job List

| | |
|---|---|
| **Title:** | Associate Private Banker |
| **Requisition #:** | 2008-65656 |
| **Employment Type:** | Regular |
| **Full/Part Time:** | Full Time |
| **FLSA Status:** | Exempt |
| **Division:** | Investment Advisors |
| **Location:** | Downtown Orlando, Orlando, FL |
| **Posted Date:** | 03/11/2008 |

### Requirements

KNOWLEDGE & SKILLS REQUIRED:

- Excellent communication skills, both verbal and written.

- Demonstrated sales and negotiating experience.

- Credit training and underwriting experience preferred.

- Demonstrated relationship building skills.

- Ability to handle multiple tasks.

- Business or Finance Bachelor's degree with MBA preferred.

- 2 - 3 years Comm. exp.

### Experience

KNOWLEDGE & SKILLS REQUIRED:

- BS/BA with concentration in business, finance, accounting or equivalent training and experience, preferred.

- Good analytical and interpersonal, oral and written communication skills

- Must be proficient in basic software applications such as Microsoft Word and Excel.

- Familiarity with the Bank's internal applications is a plus.

E.O.E., M/F/D/V

Apply to this job
Send job to a friend

Federal law requires that we hire only U.S. citizens or aliens authorized to work in the United States. If you are selected for hire, you will be required to provide documentary evidence of your identity and eligibility to work in the United States. **NOTICE**: Fifth Third Bank does conduct a pre-employment drug screening, criminal and background investigation.

Copyright © 2008 Fifth Third Bank, All Rights Reserved | Equal Opportunity Employer | Privacy Policy

Exempt

Exhibit "B"

**Fifth Third Bank**

## Exempt Performance Review

| Employee Name: Arti Joshi | Position: IA Support Specialist | Evaluation Period: 2006 | From: 1/2006 To: 12/2006 |
|---|---|---|---|
| Division/Department: IA/Private Banking | Cost Center: 44021 | Employee ID#: 008476 | Supervisor: Jacques Aebli III |

| | |
|---|---|
| Step 1 Add goals to relevant sections.<br>Step 2 Indicate the "% weight" for each performance factor. (Total of all weights should equal 100%). If a category is not relevant, do not record a weight or rating.<br>Step 3 Record results achieved and comments, citing specific examples to support ratings.<br>Step 4 Rate the employee on each of the performance factors. Note: Valid ratings are 1, 2, 3 or 4.<br>Step 5 Indicate Strengths and Areas for Development. | Step 6 Transfer ratings from individual sections to the rating table at the end of the form.<br>Step 7 The table will multiply each "% weight" times the performance rating and total all scores.<br>Step 8 Indicate the overall performance rating by placing an X on the appropriate line.<br>Step 9 Write manager comments and have the employee write comments.<br>Step 10 Sign the form. |

### PERFORMANCE RATINGS

4 - FAR EXCEEDS position requirements  
3 - EXCEEDS position requirements

2 - MEETS position requirements  
1 - DOES NOT MEET position requirements

**I. BUSINESS RESULTS (FINANCIALS/PRODUCTION/RISK MANAGEMENT/PROCESS IMPROVEMENT/SALES/PROJECTS)**

Use this category to track:
- Goals focused on sales, revenue, returns, productivity, compliance, cost reduction, budgeting, and a balance of risk and return
- Project or function specific goals that reflect project initiatives and the key accountabilities of the position
- Goals focused on process improvement

| % WEIGHT: | N/A | RATING: | 0 |
|---|---|---|---|

Goals:

CONFIDENTIAL

Exempt

## II. JOB KNOWLEDGE

| % WEIGHT: | 40 | RATING: | 4 |

**Goals:** Viewed as subject matter expert. Challenges work processes and suggests innovative ideas. Ability to respond to changing demands and still accomplish results. Develops and implements best practices. Champions compliance with applicable policies, procedures, laws and regulations.

**4  Far exceeds position requirements.** Viewed as subject matter expert. Challenges work processes and suggests innovative ideas. Ability to respond to changing demands and still accomplish results. Develops and implements best practices. Champions compliance with applicable policies, procedures, laws and regulations.

**3  Exceeds position requirements.** Performs additional duties beyond the scope of the job. Requires minimal supervisory assistance. Embraces compliance with applicable policies, procedures, laws and regulations. Can be relied upon for an informed opinion. Challenges the status quo.

**Strengths:** Driven, detailed, persistent, consistent, and teachable.

**Results Achieved/Comments:** Arfi consistently seeks ways of increasing her job/product knowledge and skills. She has completed most of the credit and product courses for private banking and has attended the Bancorp PB orientation. Her experience and knowledge of who and what it takes to support a Private Banking department contributed significantly to FTCF's PB's Bancorp #3 ranking in net income vs. plan.

**2  Meets position requirements.** Adheres to deadlines and effectively prioritizes workload. Produces accurate work with attention to detail. Complies with applicable policies, procedures, laws and regulations. Seeks to improve programs and services.

**1  Does not meet position requirements.** Unable to prioritize tasks and complete work within scheduled timeframes. Does not comply with applicable policies, procedures, laws and regulations.

**Areas for Development:** Credit skills, team-based selling skills, product knowledge.

## III. LEADERSHIP

| % WEIGHT: | 10% | RATING: | 3 |

**Goals:** Seeks out and accepts challenging opportunities. Demonstrates cooperation and maintains environment which maximizes results and celebrates success.

**4  Far exceeds position requirements.** Takes risks and challenges processes to attain business goals. Leads by example. Enables subordinates to take action. Recognized by department or division as a leader.

**3  Exceeds position requirements.** Seeks out and accepts challenging opportunities. Demonstrates cooperation and maintains environment which maximizes results and celebrates success.

**Strengths:** She is a good follower. She is constantly looking ways to improve herself, her product knowledge and her selling skills.

**Results Achieved/Comments:** Arfi does a great job of modeling the way. She has methodically pursued a private banker role and has taken the lead on a relationship, which has produced a number of lucrative accounts. This year, she will become the first private banking assistant in FTCF history promoted to a private banker.

**2  Meets position requirements.** Supports new ideas. Promotes respect among department members. Fosters teamwork and collaboration. Motivates others to achieve goals.

**1  Does not meet position requirements.** Behaviors are inconsistent with verbal message. Reacts to situations. Acts in best interest of self/department versus best interest of division/organization.

**Areas for Development:** Focus on product knowledge and team-based selling skills.

Exempt

## IV. COMMUNICATION & INTERPERSONAL SKILLS

| % WEIGHT: | 10% | RATING: | 3 |

**Goals:** Accepts diverse viewpoints and initiates appropriate action. Effectively communicates ideas and influences behavior. Resolves conflict and builds relationships to attain business objectives.

4  **Far exceeds position requirements.** Develops collaborative internal and external relationships. Nurtures diverse points of view. Influences other to action. Identifies potential conflicts and proactively initiates solutions.

3  **Exceeds position requirements.** Accepts diverse viewpoints and initiates appropriate action.   Effectively communicates ideas and influences behavior. Resolves conflict and builds relationships to attain business objectives.

**Strengths:** Articulate, a good listener, confident.

**Results Achieved/Comments: Arti** communicates well verbally and in writing to our internal and external clients. She assumed responsibility for communicating timely bank-wide and division information to the IA staff and has done an excellent job of keeping them informed.

2  **Meets requirements.** Expresses ideas and concepts effectively in both verbal and written form.  Listens and accepts diverse viewpoints.  Resolves conflict as required. Communicates openly and respectfully.

1  **Does not meet requirements.** Difficulty in building relationships.  Rarely accepts diverse viewpoints.  Offers low organizational credibility. Rarely able to resolve conflict effectively.

**Areas for Development:**  Learn effective ways of communicating with senior management.

## V. PROBLEM SOLVING/DECISION MAKING

| % WEIGHT: | 10% | RATING: | 3 |

**Goals:** Defines potential problems and formulates solutions in a timely manner. Works collaboratively to solve problems.  Utilizes creative problem-solving strategies

4  **Far exceeds position requirements.** Formulates proactive strategies to resolve problems. Takes appropriate risks when implementing solutions.  Weighs alternatives and consequences throughout the decision-making process.

3  **Exceeds position requirements.** Defines potential problems and formulates solutions in a timely manner.  Works collaboratively to solve problems.  Utilizes creative problem-solving strategies.

**Strengths:** Knowledge, backoffice orientation, experience.

**Results Achieved/Comments: Arti** is a very good problem solver. She uses her relationship skills and experience to involve outside assistance, early, when needed. She rarely needs management assistance to resolve problems.

2  **Meets position requirements.** Able to make independent decisions that support business goals and objectives which consider short- and long-term impact.

1  **Does not meet position requirements.** Unable to make effective decisions. Does not consider short- and long-term impact of decisions.

**Areas for Development:** Continue to develop relationships that will enable you to resolve problem more quickly and completely.

3 of 6

CONFIDENTIAL

Exempt

## VI. TEAMWORK

| % WEIGHT: | 20% | RATING: | 4 |
|---|---|---|---|

**Goals:** Leads the department/team in achieving goals and objectives. Builds relationships across dept/division boundaries

**Results Achieved/Comments:** Arti is all about team. She has forged strong relationships with everyone in IA and is a go-to person for the bank's other departments and back office. She has a strong desire to see the team succeed and is willing to do whatever it takes to achieve that end.

| | |
|---|---|
| **4** | **Far exceeds position requirements.** Leads the department/team in achieving goals and objectives.  Builds relationships across dept/division boundaries. |
| **3** | **Exceeds position requirements.** Assists others in accomplishing department goals and objectives. Partners well with others from other departments and divisions. Volunteers and accepts additional responsibilities. |

| | |
|---|---|
| **2** | **Meets position requirements.** Contributes to department goals and objectives by effectively working with others. Accepts and owns team decisions. |
| **1** | **Does not meet position requirements.** Unable to consistently work with others to efficiently complete projects. Acts independently with little regard to how actions affect others. |

**Strengths:** Collaborative, unselfish, loyal.

**Areas for Development:** Continue to develop selling skills and product knowledge so that you will be better able to service the clients needs

## VII. CUSTOMER SERVICE

| % WEIGHT: | 10% | RATING: | 3 |
|---|---|---|---|

**Goals:** Is viewed as responsive and able to solve problems. Seeks customers' input on changes that will impact them. Understands customer needs, motivation and concerns.

**Results Achieved/Comments:** Arti is the go to person for client problem resolution and was instrumental in developing and retaining several key accounts (Alliance Underwriters, Dr. Brown).

| | |
|---|---|
| **4** | **Far exceeds position requirements.** Proactively seeks customer feedback. Makes significant improvements to the customer experience. Seeks to expand existing relationships and build market share. |
| **3** | **Exceeds position requirements.** Is viewed as responsive and able to solve problems. Seeks  customers' input on changes that will impact them. Understands customer needs, motivation and concerns. |

| | |
|---|---|
| **2** | **Meets position requirements.** Delivers on commitments.   Seeks to understand the customer and to improve the customer experience. |
| **1** | **Does not meet position requirements.** Performance is unacceptable. Unable/unwilling to provide adequate customer service. Fails to maintain proper customer contact. Is viewed as unresponsive or unable to address customer needs. |

**Strengths:** Compassionate, persistent, collaborative.

**Areas for Development:** Seek to introduce other areas of IA to the client to increase share of wallet.

CONFIDENTIAL

4 of 6

Exempt

## VIII. EMPLOYEE DEVELOPMENT (THOSE IN A MANAGEMENT CAPACITY)

**% WEIGHT:** [ ]   **N/A** [ ]   **RATING:** [ ]

| Goals: | Results Achieved/Comments: |
|---|---|
| **4** **Far exceeds position requirements.** Acts as a role model in recruitment and retention of top talent. Creates an environment of continuous learning and provides quantitative and qualitative feedback. Develops succession plans for self and staff.<br>**3** **Exceeds position requirements.** Provides guidance and ongoing feedback to ensure team/individual performance. Recruits and retain employees with a proactive approach. Able to communicate how to achieve financial results. | **2** **Meets position requirements.** Determines and communicates performance expectations. Resolves performance issues and provides timely feedback.<br>**1** **Does not meet position requirements.** Performance is unacceptable. Unable/unwilling to provide candid feedback to obtain dept. goals or enhance individual performance. Recruitment and retention activities are reactive. |
| **Strengths:** | **Areas for Development:** |

APR-04-2008  00:46    From:                 ID:NATHAN A. McCOY        Page:006   R=97%

CONFIDENTIAL

Exempt

***Please <u>double click</u> the table below to input weights and ratings from above***

| Business Results (Financials/Production/Risk Management/Process Improvement/Sales/Projects) | 0% | | 0.00 |
|---|---|---|---|
| Job Knowledge | 40% | 4.0 | 1.60 |
| Leadership | 10% | 3.0 | 0.30 |
| Communication and Interpersonal Skills | 10% | 3.0 | 0.30 |
| Problem Solving/Decision Making | 10% | 3.0 | 0.30 |
| Teamwork | 20% | 4.0 | 0.80 |
| Customer Service | 10% | 3.0 | 0.30 |
| Employee Development | 0% | 0.0 | 0.00 |
| TOTAL | 100% | | 3.60 |

*Total % weight must equal 100.

**IMPORTANT:**
Please Do Not Delete the Calculations in the Red Column.

| | | OVERALL RATING: |
|---|---|---|
| X | 4 - | Far Exceeds Requirements (3.50-4.00) |
| | 3 - | Exceeds Requirements (2.75-3.49) |
| | 2 - | Meets Requirements (2.00-2.74) |
| | 1 - | Does Not Meet Requirements (1.00-1.99) |

Place an 'X' in the first column to indicate your overall rating.

**Manager Comments:** If there was a 2007 1A MVP award, Arti would receive it. Much of the success that the division enjoyed can be traced back to her behind the scenes support of business development and retention. Her attention to detail, unselfish willingness to pitch in, compassion for the clients and overall dedication to the team has enabled the sales force to get out and sell. Arti will assume the role of a private banking relationship manager in first quarter 2007. As her product knowledge, experience and selling skills improve; there is no doubt that she will soon become one of FTCF's best sales people.

**Employee Comments:**

**Employee Signature:** _____ Date: _____

**Manager Signature:** _____ Date: _____

CONFIDENTIAL

**Exhibit "C"**


**FIFTH THIRD BANK**

JOB SEARCH ¦ BENEFITS | COLLEGE RECRUITING | EQUAL OPPORTUNITY ¦ ABOUT FIFTH THIRD ¦ ONBOARDING

## Job Profile

**MENU**
Career Opportunities
Return to Job List

| | |
|---|---|
| **Title:** | IA Sales Support Assistant |
| **Requisition #:** | 2008-66521 |
| **Employment Type:** | Regular |
| **Full/Part Time:** | Full Time |
| **FLSA Status:** | Non-Exempt |
| **Division:** | Investment Advisors |
| **Location:** | CLEVELAND STREET MAIN OFFICE, CLEARWATER, FL |
| **Posted Date:** | 04/03/2008 |

### Requirements

**GENERAL FUNCTION:**
Provides sales/administrative support to IA Management Team. Typically provides assistance to the IA sales team in the sales process. Also provides customer service support.

**ESSENTIAL DUTIES & RESPONSIBILITIES:**

- Assists in the preparation of new business presentations.
- Coordinates with marketing to ensure sales material is current and available for sales staff.
- Assists IA managers with administrative issues (mailings, customer correspondence, seminars, research, etc).
- Handles management reporting (i.e. sales tracking and reports).
- Schedules and coordinates meetings for sales team. Plans events both internal and external.
- Follows up on client contacts to field questions and perform research needed to resolve customer issues in a timely manner.
- Works closely with other members of the department to insure exceptional customer service is being provided to the client base.
- Performs various administrative duties as needed (answer phones, travel arrangements, filing, correspondence, etc.)

**SUPERVISORY RESPONSIBILITIES:**
N/A

### Experience

**MINIMUM KNOWLEDGE, SKILLS AND ABILITIES REQUIRED:**

- High School Diploma or equivalent
- Good interpersonal skills; Ability to handle and prioritize multiple tasks; Experience with Word, Excel and PowerPoint required.

E.O.E., M/F/D/V

Apply to this job
Send job to a friend

Federal law requires that we hire only U.S. citizens or aliens authorized to work in the United States. If you are selected for hire, you will be required to provide documentary evidence of your identity and eligibility to work in the United States. **NOTICE:** Fifth Third Bank does conduct a pre-employment drug screening, criminal and background investigation.

Copyright © 2008 Fifth Third Bank, All Rights Reserved | Equal Opportunity Employer | Privacy Policy

.